IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

MATTHEW DUBOVICK          )
                          )
  Appellant/ Defendant Below,   )
                          )
  v.                      )          C.A. No.: CPU5-12-001171
                          )
ANGELA ANDREW-WEBB,       )
                          )
  Appellee/ Plaintiff Below.    )
                          )

John C. Andrade, Esq.                    Adam C. Gerber, Esq.
Parkowski, Guerke & Swayze               Hudson, Jones, Jaywork & Fisher
116 W. Water Street                      225 South State Street
P.O. Box 598                             Dover, DE 19901
Dover, DE 19904                          Attorney for the Appellee/ Plaintiff Below
Attorney for the Appellant/ Defendant Below

Trial:    June 23, 2014
Decided:  July 25, 2014

**<u>DECISION AFTER TRIAL</u>**

This is a civil action arising out of a breach of contract. Defendant Below/ Appellant,

Matthew Dubovick, filed an appeal with this Court against Plaintiff Below/ Appellee, Angela

Andrew-Webb, for a trial *de novo* from a final order of the Justice of the Peace Court. Ms.

Andrew-Webb contends Mr. Dubovick breached an agreement to split the cost of an *in vitro*

fertilization ("IVF") procedure. Ms. Andrew-Webb maintains that as a result of Mr. Dubovick's

failure to pay the debt, she is entitled to an award of $10,168.43 from the Court. Mr. Dubovick contends that he never agreed to pay for the procedure. Following trial on this matter, the Court enters judgment for Ms. Andrew-Webb and against Mr. Dubovick in the amount of $10,168.43 plus court costs and pre and post-judgment interest at the legal rate of 5.75% from May 17, 2012.

## FACTS

In November of 2009, Ms. Angela Andrew-Webb and Mr. Matthew Dubovick entered into a romantic relationship. The parties' relationship became serious, even planning to marry. In the summer of 2010, the parties decided to conceive a child together. In October of 2010, Ms. Andrew-Webb suffered a miscarriage.

In early 2011, the parties consulted a reproductive specialist to discuss the possibility of using IVF to conceive a child. The parties were aware the IVF process was costly and that it required not only the initial procedure, but also several tests and medications. Around April of 2011, the parties orally agreed to split the cost of the IVF after multiple discussions during their nightly baths. They agreed that Mr. Dubovick would reimburse Ms. Andrew-Webb for his share of the costs, amounting to $10,168.43, when he sold his home. Ms. Andrew-Webb would not have gone forward with the procedure without Mr. Dubovick's agreement to pay for half of the costs.

Ms. Andrew-Webb paid the full amount of the IVF procedure, $20,336.86, out of her savings. Mr. Dubovick paid for his tests and half of the cost of the high-risk doctor Ms. Andrew-Webb consulted. In June of 2011, the IVF procedure was performed and Ms. Andrew-Webb conceived a child. On August 12, 2011, Mr. Dubovick sold his home; however, he received less money from the sale than expected. Additionally, Mr. Dubovick had a substantial amount of credit card debt at this time. As a result, Ms. Andrew-Webb gave Mr. Dubovick a grace period

2

for paying back his share of the IVF procedure to her so that he could pay down his credit card bills. Ms. Andrew-Webb never told Mr. Dubovick he was no longer obligated to reimburse her; however, she did not ask him for the money during the remainder of their relationship.

On February 9, 2012, Ms. Andrew-Webb gave birth to the parties' son, Derek. On or about April 17, 2012, the parties ended their relationship. (Def.'s Ex. 3). On or about April 18, 2012, Mr. Dubovick moved out of Ms. Andrew-Webb's house. (Def.'s Ex. 3). On or about May 17, 2012, Ms. Andrew-Webb requested for the first time that Mr. Dubovick pay his portion of the IVF procedure. (Def.'s Ex. 3). Ms. Andrew-Webb subsequently asked Mr. Dubovick numerous times to pay his half of the procedure, but he either denied owing the debt, gave an excuse,[1] or ignored her demands. Mr. Dubovick failed to reimburse Ms. Andrew-Webb for his half of the IVF procedure costs, resulting in this suit to enforce the contract between Ms. Andrew-Webb and Mr. Dubovick.

Ms. Andrew-Webb contends that she and Mr. Dubovick contracted to split the costs of the IVF procedure. She asserts that she is entitled to $10,168.43 pursuant to Mr. Dubovick's breach of contract when he failed to repay his half of the procedure costs. Mr. Dubovick contends that he is not liable because Ms. Andrew-Webb agreed to pay the total costs of the IVF procedure.

## DISCUSSION

For a breach of contract action, the plaintiff must prove by a preponderance of the evidence: "(1) a contractual obligation; (2) a breach of that obligation; and (3) damages resulting

---

[1] One of Mr. Dubovick's excuses was that he would repay the debt when he was able to get back on his feet. Since the beginning of the couple's relationship, Mr. Dubovick has purchased four or five new vehicles. At trial, Mr. Dubovick admitted that he had a history of spending money when he was depressed.

3

from said breach." *First State Const., Inc. v. Thoro-Good's Concrete Co., Inc.*, 2010 WL 1782410, at *3 (Del. Super. May 3, 2010).

First, the Court concludes that an oral contract existed between Ms. Andrew-Webb and Mr. Dubovick whereby Mr. Dubovick agreed to pay Ms. Andrew-Webb half the costs of the IVF procedure when he sold his house. The Court finds Ms. Andrew-Webb's testimony credible regarding the fact she would not have gone through with the IVF procedure but for Mr. Dubovick's promise to pay for half of the costs. Both of the parties testified they wanted a child. They consulted the reproductive specialist, went to doctor's visits together, and submitted to the requisite testing for the IVF procedure. Mr. Dubovick paid for his testing and half of Ms. Andrew-Webb's visits to a high-risk doctor during the term of her pregnancy. Ms. Andrew-Webb has proven by a preponderance of the evidence that there was a contract between the parties to split the costs of the procedure and that Mr. Dubovick's payment was due upon the closing of the sale on his house.

Second, the Court finds Mr. Dubovick breached the contract when he sold his house and did not reimburse Ms. Andrew-Webb for the costs of the IVF. After the breach occurred, Ms. Andrew-Webb merely instituted a grace period for Mr. Dubovick to pay; however, the debt was due and payable at any time after Mr. Dubovick sold his house, pursuant to the terms of the parties' contract, and certainly by the time of Ms. Andrew-Webb's demand for payment on May 17, 2012.

Finally, the Court finds that the damages Ms. Andrew-Webb is seeking are a direct result from the breach of contract. But for Mr. Dubovick's failure to pay his share for the IVF procedure, Ms. Andrew-Webb would not have brought this suit seeking $10,168.43 for half of the costs of the procedure. As a result, the Court concludes that Ms. Andrew-Webb has proven

4

by a preponderance of the evidence that Mr. Dubovick is liable to her for breach of contract and enters judgment accordingly.

## CONCLUSION

As a result of the Court's finding of fact, which is based upon the entire record, including all direct and circumstantial evidence, and all references resulting therefrom, and the Court's above-referenced conclusions of law, the Court enters judgment for the Plaintiff Below/ Appellee, Angela Andrew-Webb, and against the Defendant Below/ Appellant, Matthew Dubovick, in the amount of $10,168.43, plus court costs and pre and post-judgment interest at the legal rate of 5.75% from May 17, 2012.

**IT IS SO ORDERED this 25ᵗʰ day of JULY, 2014.**

CHARLES W. WELCH
JUDGE